CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant,
vs. PULP WOOD COMPANY, Respondent.

*October 5—October 24, 1916.*

*Carriers: Embargo: Cars furnished for one commodity and loaded with another: Refusal to accept: Demurrage: When transportation begins.*

1. Upon being refused cars for pulp wood because of an embargo thereon, a shipper ordered cars for loading tan bark, but loaded them with pulp wood and demanded acceptance of the shipment. The railway company refused to accept the cars and demanded that they be unloaded. The shipper refused to unload, and the railway company did not remove the pulp wood from the cars, but after the embargo had been raised accepted the shipment for transportation. *Held,* that the cars were not used

in transportation, within the meaning of sec. 1797—4, Stats., until the acceptance of the shipment, and hence were not subject to a demurrage charge for the time they were held on the tracks before such acceptance.

2. The service of such cars prior to the two days' free time allowed for loading them under the car-service rules was not a service in connection with transportation as contemplated by sec. 1797—4, Stats.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge.  *Affirmed.*

The action is brought by plaintiff against defendant, as a consignee, for the recovery of demurrage charges on an intrastate shipment of cars pursuant to demurrage tariffs filed with the Wisconsin railroad commission.

The plaintiff, as a common carrier, does an interstate and intrastate business.  Its railroad connects with the Wisconsin Central Railway Company at Neenah and Menasha, Wisconsin.  The defendant is a corporation duly organized and existing by virtue of the laws of the state of Wisconsin and is engaged as a buyer of pulp wood.  Plaintiff company had complied with ch. 362, Laws 1905, by filing schedules showing its rates, fares, and charges for intrastate transportation of property, including its schedules for demurrage charges. Prior to the 26th day of May, 1908, the shipments of pulp wood and forest products were very far in excess of normal, which caused the tracks of plaintiff at Appleton to become badly congested, including those tracks which served defendant.  Because of this congestion, cars of pulp wood and other commodities could not be placed on plaintiff's tracks at Appleton and be unloaded in due time.  Defendant was under contract to purchase for and deliver to different companies pulp wood, including the wood here involved.  In order to relieve this congestion the Wisconsin Central Railway Company issued an embargo or blockade notice on the 26th day of May, 1908, directing its agents to furnish no more cars for loading pulp wood consigned to Appleton, Wisconsin, until

the congestion had ceased. The plaintiff also issued notices of embargo on pulp wood consigned to Appleton. Due notice of this embargo was given to the defendant company and to G. Wilkinson at Mellen, Wisconsin. Wilkinson, when refused cars for pulp wood, ordered eleven cars from the Wisconsin Central Railway Company for loading tan bark. These cars were delivered to Wilkinson shortly after May 26, 1908, who loaded them with pulp wood and demanded that the Wisconsin Central Railway Company accept the same and transport them to the connecting point with the plaintiff's line to forward and deliver them to the defendant at Appleton. The Wisconsin Central Railway Company refused to accept the cars loaded with pulp wood and demanded of Wilkinson that he unload the cars, and notified him that in default thereof the cars would remain as they were until after the embargo was raised. Wilkinson, defendant, and the railroads communicated by letters, and finally, when defendant agreed to take such pulp wood, it notified the plaintiff and the Wisconsin Central Railway Company that it would not be liable for any demurrage charges which might be claimed on the cars and that it would not receive the cars if it was to be charged with any demurrage. The Wisconsin Central Railway Company transported the cars, after the raising of the embargo, to the point where its line connects with the plaintiff company and tendered the cars to the plaintiff company, demanding prepayment of freight, demurrage, and other transportation charges. Plaintiff company accepted the cars and paid all the freight, demurrage, and transportation charges, which included the sum of $711 for demurrage. Before the commencement of this action plaintiff demanded of defendant the payment of these charges and defendant refused and still refuses payment of any demurrage charge.

The case was submitted to the court upon the above stipulated facts and the circuit court found for the defendant.

Judgment was entered in favor of the defendant and for costs of the action.    From such judgment this appeal is taken.

For the appellant there was a brief by *Lines, Spooner, Ellis & Quarles,* and oral argument by *Louis Quarles.*

*Felix J. Streyckmans,* for the respondent.

SIEBECKER, J.    The question raised upon the admitted facts presents the inquiry: Is plaintiff entitled to recover the amount claimed as a demurrage charge for the service of cars furnished by the Wisconsin Central Railway Company to G. Wilkinson in the light of the facts and circumstances above stated under the tariff and demurrage rules on file with the state railroad commission?    The demurrage rules provide which cars are to be subject to car-service charges and the amount thereof per day.    The plaintiff contends that the cars in question were subject to demurrage under rule 4, providing:

"Cars which are stopped in transit by orders of shippers or consignees for reconsignment to points beyond, for change of load . . . or on account of improper, unsafe, or excessive loading, or for any other reason for which the shipper or consignee is responsible, shall be subject to car-service charges after the expiration of forty-eight (48) hours from arrival at the point of stoppage, and all car service must be collected, or billed as advances when cars go forward."

The argument is made that the railroad company was required to furnish the cars in question to Wilkinson upon his request, and that the loading of them by him and his refusal to unload the pulp wood upon the demand of the railroad company was a use of them for transportation and a service of the cars in connection therewith authorizing a demurrage charge for such use under secs. 1797—4 and 1797—10, Stats. The facts and circumstances show that a controversy arose between the Wisconsin Central Railway Company and Wil-

kinson from the time the cars were loaded with pulp wood by him instead of tan bark, because he had loaded them with pulp wood which could not then be shipped on account of the embargo. The railroad company refused to accept the shipment and Wilkinson insisted the company should accept it and refused to unload the cars. This disagreement continued until the company accepted the shipment on August 17, 1908, after the embargo had been raised. It also appears that the railroad company refused to receive the shipment under any conditions until August 17th. The undisputed facts of the case show clearly that there was no acceptance of this shipment for transportation before this day. It is evident that Wilkinson's use of the cars for storing the wood up to August 17th does not constitute a use of them on his part for a transportation service. It remains to ascertain the effect of the conduct of the railroad company in dealing with the cars during this period. It is obvious from the facts and circumstances that the pulp wood was not accepted by the railroad company for shipment until August 17th. It clearly had a right to remove the pulp wood from the cars when Wilkinson refused to unload it and use the cars as it deemed best during the existence of the embargo. Under the facts and circumstances, the refusal by the railroad company to accept the shipment and its refusal to unload the cars necessarily implies that it did not devote the cars to a transportation of this shipment during the time that they stood at Mellen prior to August 17th, when the company accepted the shipment for transportation. Under these conditions the cars were not used in transportation until acceptance of the shipment for transportation and hence were not subject to a demurrage charge in connection therewith for the period prior to the two days' free time allowed for loading them under the car-service rules. Whatever the nature of the service of these cars may have been prior to such time is not material here. It is obvious that it is not a service in con-

nection with transportation as contemplated by sec. 1797—4, Stats.

The trial court properly held that the Wisconsin Central Railway Company had no claim for demurrage for the time the cars were held on the tracks before they were accepted to transport the pulp-wood shipment, and plaintiff's complaint was properly dismissed.

*By the Court.*—The judgment appealed from is affirmed.

KERWIN and ESCHWEILER, JJ., took no part.